IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUANITA LARA, | ) | |
| Plaintiff, | ) ) ) | No. 04 C 4822 |
| v. | ) ) | Paul E. Plunkett, Senior Judge |
| DIAMOND DETECTIVE AGENCY and WILLIAM BROWN, | ) ) ) ) | |
| Defendants. | ) ) | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion for summary judgment as to Count I (hostile work environment) and IV (intentional infliction of emotional distress) of Plaintiff Juanita Lara's amended complaint. For the reasons provided below, Defendants' motion is granted.

### Background

The following facts are undisputed or have been deemed admitted pursuant to Local Rule 56.1, which this Court strictly enforces. Defendant Diamond Detective Agency ("Diamond") is a provider of security services for schools and businesses. (Defs.' LR 56.1(a)(3) ¶ 13.) Since March 1997, Diamond has employed Plaintiff, Juanita Lara ("Lara") as a security guard. (Id. ¶ 14.) Beginning in November 2001, Diamond assigned Lara to work at Thornwood High School in South Holland, Illinois. (Id. ¶¶ 14, 22.) Starting in 1997 and continuing through her assignment at Thornwood High School, Defendant William Brown ("Brown") supervised Lara. (Id. ¶ 23.) As a

security supervisor, Brown is expected to ensure that each security post is filled on a particular day, and that the guards are on-time, in uniform and performing as expected. (*Id.* ¶ 21.)

During her deposition, Lara testified as to a number of incidents of alleged sexual harassment by Brown. First, Lara testified that in November 2001, Brown commented on her breasts, whispering to her that her "tits looked nice in that sweater."[1] (*Id.* ¶ 59.) Lara testified that she was shocked by Brown's comment, asking him: "What did you say?" (Pl.'s LR 56.1(b)(3)(A) ¶ 101.) Brown denied commenting about Lara's wearing of a sweater or saying to her that "your nipples look nice in that sweater." (Defs.' LR 56.1(b)(3) ¶ 71.) Lara also testified that she told three other female security guards, Evelyn Chambers, Juanita Jones and Linda Robinson, about Brown's alleged comment. (Pl.'s LR 56.1(b)(3)(A) ¶ 101.) However, Lara did not inform a human resources employee at that time. (Lara Dep. 171:23-24.)

Thereafter, in February 2002, Lara alleges that after observing a woman on a monitor in the security office, Brown commented "look at the tits on her" while in Lara's presence. (Defs.' LR 56.1(b)(3) ¶ 57.) Moreover, Lara testified that sometime during the first two weeks of that month Brown also attempted to peer down her shirt to see her breasts. Specifically, she testified that as she leaned over a desk in the security office in order to use a phone, Brown, standing on the other side

---

[1] The Court notes that Brown's alleged November 2001 comment took place more than 300 days prior to Lara's filing of her EEOC charge on December 13, 2002. Generally, "federal courts only consider evidence from this 300-day period when making Title VII determinations." *Bridges v. Metro. Water Reclamation Dist. of Greater Chicago*, No. 2005 WL 241469, 2005 WL 241469, at *5 (N.D. Ill. Jan. 20, 2005) (citing *Dandy v. United Parcel Serv., Inc.*, 388 F.3d 263, 270 (7th Cir.2004)). However, in considering a hostile work environment claim, "it does not matter that some of the component acts of a hostile work environment claim fall outside the statutory time period, as long as one act took place within the limitations period." *Id.* (citing *Nat. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Because Lara has alleged acts occurring within the statutory time period, this Court can properly consider the November 2001 comment in determining whether a hostile work environment existed.

of the desk, tugged her uniform shirt and attempted to pull it to the side, as if to peer down her shirt. (*Id.* ¶ 61.) While Diamond's standard winter uniform required the shirt to be buttoned to the neck and accompanied by a necktie, at the time of the incident, the top two buttons of Lara's uniform shirt were unbuttoned and Lara was not wearing her uniform's tie. (*Id.* ¶ 64.) Lara responded to Brown's action by telling him "not to do that" after which she testified Brown began laughing and walked out of the office. (Defs.' LR 56.1(b)(3) ¶ 63; Pl.'s LR 56.1(b)(3)(A) ¶ 102.) Lara admitted that Brown touched neither her chest nor her breast. (Defs.' LR 56.1(b)(3) ¶ 65.) Again, Brown denied the event ever occurred. (*Id.* ¶ 68.)

Additionally, toward the end of May 2002, Lara testified that Brown asked her out on a date, to which Lara responded by turning away. (*Id.* ¶ 60.) However, Brown denied asking Lara to go out with him. (*Id.* ¶ 72.)

Lara also testified to two incidents for which she was unable to assign approximate dates.[2] Specifically, Lara testified that on nearly a daily basis, Brown would comment "Mm, Lara you smell so good" as he passed her in the hallway.[3] (*Id.* ¶ 58; Pl.'s LR 56.1 (b)(3)(A) ¶ 100.) While Brown did not deny that he commented on Lara's perfume, he testified that he made only one remark about her perfume, sometime during the second year of her employment, in 1998 or 1999. (Defs.' LR

---

[2]Lara's inability to assign specific dates to her allegations is not fatal to her ability to bring her claim. *See Curde v. Xytel Corp.*, 912 F.Supp. 335, 341 (N.D. Ill. 1995) (citing *Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1456-57 (7th Cir. 1994)).

[3]The Court notes Lara's deposition testimony differed from the allegations in her amended complaint, in which she alleged Brown commented about the way Lara smelled "[o]n several occasions between November 2001 and June 2002" rather than every time he walked past her. *See* Am. Compl. ¶ 11.

56.1(b)(3) ¶ 69.) She also added that on another occasion, Brown touched her hair as he passed her. (Pl.'s LR 56.1 (b)(3)(A) ¶ 104.)

Despite these allegedly harassing comments and conduct, it does not appear that Lara lodged any specific complaints to superiors at Diamond about Brown's behavior until sometime in August 2002. During that time, Lara expressed her feeling to operations manager Ken Ferree that Brown was retaliating against her and that he was trying to have her terminated for not "going along with the program." (*Id.* ¶ 105.) As operations manager, Ferree performed client relations tasks, insured that Diamond's guards arrived at their work-site on time and in uniform as well as controlling dispatch of guards. (Defs.' LR 56.1 (b)(3) ¶ 34.)

Moreover, in September 2002, Lara complained to Ferree a second time. (*Id.* ¶ 17.) As a result of this second complaint to Ferree, Brown requested a meeting with Lara and Ferree, during which time Lara complained to Ferree about having been "written up" for failing to wear her uniform's necktie. (*Id.* ¶¶ 35-36.) During that meeting, Lara mentioned no incidents of allegedly sexually harassing behavior or comments by Brown toward Lara.[4] (*Id.* ¶ 39.) Ferree informed Lara that she needed to draft a letter to Geoffrey White ("White"), Diamond's Vice President of Human Resources, explaining her position as to why she felt that she should not have been "written up." (*Id.* ¶¶ 18, 37.) As Vice President of Human Resources, White was responsible for staffing, training, workers' compensation issues, as well as implementing and ensuring compliance with various policies and procedures. (*Id.* ¶ 19.) White also helped to enforce Diamond's sexual harassment policy, through investigating, interviewing and documenting an alleged incident. (*Id.* ¶ 32.)

---

[4] Indeed, Ferree later testified that he was unaware of Brown's alleged behavior until approximately one year prior to being deposed on June 21, 2005. (Defs.' LR 56.1 (b)(3) ¶ 42.)

As a result of Ferree's recommendation, Lara wrote a letter to White, complaining about "the continuing harassment and discrimination" she received. (Pl.'s LR 56.1 (b)(3)(A) ¶ 106.) Yet again, Lara made no specific reference of sexual harassment in that letter to White and White testified that he was never made awarae of sexual harassment complaints by Lara against Brown until he received notice of the Equal Employment Opportunity Commission ("EEOC") charge. (Defs.' LR 56.1 (b)(3) ¶ 43.)

After filing a charge with the EEOC on December 13, 2002, Lara received her right to sue letter on April 29, 2005. Thereafter, on July 22, 2004, Lara filed a *pro se* complaint, which she amended on October 14, 2004 after obtaining the assistance of counsel. On February 10, 2005, this Court granted in part Defendants' motion to dismiss, thereby dismissing with prejudice the following counts or defendants: Count I (hostile work environment) as to defendants Brown and John Jordan ("Jordan"), Diamond's president, Count II (retaliation) and Count III (negligence) as to all defendants, and Count IV (intentional infliction of emotional distress) as to Jordan. On October 28, 2005, Diamond and Brown moved for motion for summary judgment on the remaining counts.

## Legal Standard

To prevail on a summary judgment motion, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, [must] show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). At this stage, the Court does not weigh evidence or determine the truth of the matters asserted, see *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Significantly, the Court views all evidence and draws all inferences in favor of the non-moving party.

*Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

In addition, where "undisputed facts give rise to disputed inferences," summary judgment is not appropriate. *Harley-Davidson Motor Co., Inc. v. Powersports, Inc.*, 319 F.3d 973, 989 (7th Cir. 2003) ("[T]he choice between reasonable inferences from facts is a function of the fact-finder."). *See also Ramirez v. The Nutrasweet Co.*, No. 95 C 0130, 1997 WL 684984, at *7 (N.D. Ill. Oct. 27, 1997) ("[I]f the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance, summary judgment must not be granted.") (citing *O'Connor v. Chicago Transit Auth.*, 985 F.2d 1362, 1366 (7th Cir. 1993)).

## Analysis

Defendants move for summary judgment on three grounds, arguing: (1) that Lara's allegations do not constitute actionable sexual harassment; (2) that Diamond has established an affirmative defense in that Diamond exercised reasonable care to prevent sexually harassing behavior and that Lara failed to utilize internal opportunities offered by Diamond to address such behavior; and (3) that Lara cannot state an actionable claim for intentional infliction of emotional distress against Brown. *See generally* Defs.' Mem. Supp. Mot. Summ. J. Each argument will be discussed in turn.

## I. Lara's Hostile Work Environment Sexual Harassment Claim

Pursuant to Count I of her amended complaint, Lara alleges that Brown's actions created a hostile work environment. *See* Am. Compl. ¶¶ 1-19. Diamond first argues that even if the conduct alleged by Lara actually occurred, the totality of Brown's alleged conduct does not give rise to an objectively hostile work environment. *See* Defs.' Mem. Supp. Mot. Summ. J. at 8-9. In response, Lara contends that Brown's conduct, when viewed as a whole, "presents a genuine issue of material fact that an intimidating, hostile or offensive environment was created" such as to preclude summary judgment. (Pl.'s Resp. Defs.' Mot. Summ. J. at 24.)

Pursuant to 42 U.S.C. § 2000e-2(a)(1), it is "an unlawful unemployment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of an individual's race, color, religion, sex or national origin." *Moser v. Ind. Dept. of Corr.*, 406 F.3d 895, 902 (7th Cir. 2005). Lara "may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Id.* In order to establish a *prima facie* case for hostile work environment sexual harassment, Lara must show that:

> (1) she was subjected to unwelcome sexual harassment; (2) the harassment was based on her sex; (3) the harassment unreasonably interfered with her work performance by creating an intimidating, hostile or offensive working environment that seriously interfered with her psychological well-being; and (4) there is a basis for employer liability.

*Id.*

As the Seventh Circuit has noted, in order for a plaintiff to show a hostile work environment, "the alleged harassment must be both subjectively and objectively so severe or pervasive as to alter the conditions of her employment and create an abusive working environment." *Whittaker v. N. Ill.*

*Univ.*, 424 F.3d 640, 645 (7th Cir. 2005) (internal quotation omitted). Moreover, "[i]n determining whether the environment was objectively hostile, a court must consider all of the circumstances, including the frequency and severity of conduct, whether it is threatening and/or humiliating or merely offensive, and whether the harassment unreasonably interferes with the employee's work." *Id.* "Indeed, the threshold for plaintiffs is high, as the workplace that is actionable is one that is *hellish.*" *Id.* (emphasis added). Whether such an environment exists is a question for this Court to decide. *Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 345 (7th Cir. 1995).

In viewing the evidence and drawing all inferences in Lara's favor, the Court finds that no reasonable jury could find that Lara's work environment was objectively hostile such that it rose to the level of being hostile or offensive, let alone being "hellish." Brown's alleged conduct was infrequent, occurred over a several month period and never reached the level of offensive touching or outrageous comments. It is also significant that Lara admitted Brown "never made too many sexual comments to me," see Def.'s LR 56.1(b)(3) ¶ 61, and that Lara, even when complaining to her supervisors, never specifically mentioned sexual harassment.

First, the most egregious conduct alleged by Lara, i.e. Brown's attempt to peer down her shirt, though offensive, does not constitute actionable sexual harassment as the Seventh Circuit has made it "clear that some acts going beyond occasional banter also fail to constitute an objectively hostile environment." *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965 (7th Cir. 2004) (citing *Adusumili v. City of Chicago*, 164 F.3d 353, 361-62 (7t Cir. 1998); *Weiss v. Coca-Cola Bottling Co.*, 990 F.2d 333, 337 (7th Cir. 1993)). Again, though offensive, it is certainly no worse than the poke to the buttocks experienced by the plaintiff in *Adusumili*, or the unwanted touches and attempted kisses experienced by the plaintiff in *Weiss*, cases in which the Seventh Circuit found such conduct

not actionable. *See Adusumili*, 164 F.3d at 361-62; *Weiss*, 990 F.2d at 337. Moreover, as Lara testified, though Brown pulled on her uniform shirt, he did not contact her breast or her chest. (Defs.' LR 56.1(b)(3) ¶ 65.) As such, the incident's lack of severity fails to support her claim. *See Whittaker*, 424 F.3d at 646 ("It is well settled that 'relatively isolated instances of non-severe misconduct will not support a claim of a hostile environment.'") (quoting *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993)). *Cf. Loughman v. Malnati Org. Incorp.*, 395 F.3d 404, 408 (7th Cir. 2005) (rejecting defendant-employer's argument that three isolated incidents of physical contact failed to create a hostile work environment in light of the severity of the incidents).

Next, Brown's February 2002 comment, "look at the tits on her," regarding a woman he observed on a security monitor is of lesser importance in the Court's analysis of Lara's allegations because it was not directed at Lara, even though it was allegedly made in Lara's presence. While the comment is still relevant in considering whether a hostile work environment existed, the Seventh Circuit has recognized that this type of "second-hand harassment" does not have as great of an impact as harassment directed at a Title VII plaintiff would have. *See Gleason v. Meisrow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997). While this "does not mean that a plaintiff can never demonstrate a hostile work environment through second-hand comments or in situations where a plaintiff is not the intended target of the statements," see *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 568 (7th Cir. 2004), in this case, however, Lara alleged only one second-hand comment, and when combined with her other allegations does not rise to the level of a hostile work environment.

Finally, with respect to Brown's allegedly daily remark "Mm. Lara you smell good," the remark does not facially appear to have been motivated by gender. Rather, Brown's comment facially appears to be non-gender based. As this Court has previously held, where there is no

not actionable. *See Adusumili*, 164 F.3d at 361-62; *Weiss*, 990 F.2d at 337. Moreover, as Lara testified, though Brown pulled on her uniform shirt, he did not contact her breast or her chest. (Defs.' LR 56.1(b)(3) ¶ 65.) As such, the incident's lack of severity fails to support her claim. *See Whittaker*, 424 F.3d at 646 ("It is well settled that 'relatively isolated instances of non-severe misconduct will not support a claim of a hostile environment.'") (quoting *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526, 533 (7th Cir. 1993)). *Cf. Loughman v. Malnati Org. Incorp.*, 395 F.3d 404, 408 (7th Cir. 2005) (rejecting defendant-employer's argument that three isolated incidents of physical contact failed to create a hostile work environment in light of the severity of the incidents).

Next, Brown's February 2002 comment, "look at the tits on her," regarding a woman he observed on a security monitor is of lesser importance in the Court's analysis of Lara's allegations because it was not directed at Lara, even though it was allegedly made in Lara's presence. While the comment is still relevant in considering whether a hostile work environment existed, the Seventh Circuit has recognized that this type of "second-hand harassment" does not have as great of an impact as harassment directed at a Title VII plaintiff would have. *See Gleason v. Meisrow Fin., Inc.*, 118 F.3d 1134, 1144 (7th Cir. 1997). While this "does not mean that a plaintiff can never demonstrate a hostile work environment through second-hand comments or in situations where a plaintiff is not the intended target of the statements," see *Smith v. Northeastern Ill. Univ.*, 388 F.3d 559, 568 (7th Cir. 2004), in this case, however, Lara alleged only one second-hand comment, and when combined with her other allegations does not rise to the level of a hostile work environment.

Finally, with respect to Brown's allegedly daily remark "Mm. Lara you smell good," the remark does not facially appear to have been motivated by gender. Rather, Brown's comment facially appears to be non-gender based. As this Court has previously held, where there is no

obvious gender-based animus for allegedly harassing incidents, a plaintiff-employee has the burden to offer evidence showing that gender bias motivated such incidents. *See Poulos v. Vill. of Lindenhurst*, No. 00 C 5603, 2002 WL 31001876, at *5 (N.D. Ill. Sept. 3, 2002) (requiring a plaintiff-employee to "present some evidence from which we can infer that these ostensibly neutral actions were motivated by anti-female bias to satisfy the second element of her *prima facie* case"). Consequently, because Lara has not provided additional evidence suggesting that she was the only recipient of such a comment or that the comments were made because of her gender, Brown's allegedly recurring comment cannot be used as a basis to support her hostile work environment claim. *See id.*

However, even if the Court were to consider the perfume remark as a basis for her claim, the Court notes that although the remark was allegedly frequent, it was neither severe, vulgar, or physically threatening, and it does not appear the comment interfered with her work performance. Nor has Lara alleged that these comments were of a sexual nature. *See Dey v. Colt Constr. & Dev. Co.*, 28 F.3d 1446, 1456 (7th Cir. 1994) (noting that the court "might be inclined to agree" with defendant-employer's argument that five specific instances of harassment over two-and-one- half years were relatively isolated, non-severe and non-pervasive if the plaintiff-employee did not allege "that she was subjected to almost daily comments, gestures, and innuendo of a sexual nature" whenever her supervisor was in the office). Furthermore, the impact of the comment is also assuaged because it occurred as Brown and Lara passed each other in the school's hallway rather than in an enclosed or confined space, where physical proximity might have served to amplify the effect of Brown's remark on Lara. (Defs.' LR 56.1(b)(3) ¶ 58; Pl.'s LR 56.1(b)(3)(A) ¶ 100.) *See Wyninger*, 361 F.3d at 976 (pointing to a sexually insinuating telephone request by the plaintiff-

employee's supervisor, coupled with an audience listening to that request, and a physically intimidating situation where the plaintiff-employee was locked in a small room with three larger men to discuss oral sex as "possibly" severe enough to constitute a hostile work environment, noting, however, that the incidents were not pervasive).

Lara cites to the Seventh Circuit's decision in *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428 (7th Cir. 1995) in an attempt to "draw the line" as to what does and what does not constitute actionable sexual harassment. (Pl.'s Resp. Mot. Summ. J. at 23-24.) However, as the *Baskerville* court noted, "[d]rawing the line is not always easy," explaining that:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Baskerville*, 50 F.3d at 430.

Lara's testimony does not reveal that she felt physically threatened by Brown's conduct, which was largely occasional. If anything, it reveals that Lara felt Brown's behavior was obnoxious. Though Brown asked Lara out on a date, he never solicited Lara for sex, gestured to her obscenely nor did he show her pornographic pictures. He did not sexually assault her. Because Title VII does not protect against boorish and adolescent behavior, instead acting to "protect working women from the kind of male attentions that can make the workplace hellish for women," *Baskerville*, 50 F.3d at 430, Lara's hostile work environment claim fails to rise to the level such that it constitutes an actionable hostile work environment claim. As a result, summary judgment is granted as to Count I of Lara's amended complaint.

## II. Diamond's Affirmative Defense To Lara's Sexual Harassment Claim

Diamond also asserts that it has established an affirmative defense to Lara's hostile environment claim. *See* Defs.' Mem. Mot. Summ. J. at 10. However, because the Court finds that summary judgment is appropriate as to Count I of Lara's amended complaint, an inquiry into whether Diamond is able to set forth an affirmative defense to Lara's hostile work environment sex harassment claim is unnecessary. *Cf. Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 - 1049 (7th Cir. 2000) (declining to "decide whether a hostile work environment existed because the question whether [the employer] took prompt and effective remedial action [was] dispositive").

## III. Lara's Intentional Infliction of Emotional Distress Claim

Finally, the Court addresses Lara's claim for intentional infliction of emotional distress against Brown. In support of its motion for summary judgment on Lara's intentional infliction of emotional distress claim, Diamond argues that Lara's allegations "fall short of the extreme and outrageous conduct that would constitute intentional infliction of emotional distress" contending that Lara's allegations are "at most, petty indignities." (Defs.' Mem. Mot. Summ. J. at 13-14.) In response, Lara asserts that Brown's conduct was "well beyond" the parameters of a usual workplace dispute, arguing that she provided "solid evidence" showing that Brown caused severe emotional distress, citing that she was "shocked" about Brown's comment regarding the way her breasts looked in a sweater and her "disgust" that Brown asked her out on a date after "he had been harassing her for at least six months." (Pl.'s Resp. Mot. Summ. J. at 25-26.)

"A claim for intentional infliction of emotional distress . . . requires more than what is required for sexual harassment." *Poulos*, 2002 WL 31001876 at *17 (quoting *Piech v. Arthur*

## II. Diamond's Affirmative Defense To Lara's Sexual Harassment Claim

Diamond also asserts that it has established an affirmative defense to Lara's hostile environment claim. *See* Defs.' Mem. Mot. Summ. J. at 10. However, because the Court finds that summary judgment is appropriate as to Count I of Lara's amended complaint, an inquiry into whether Diamond is able to set forth an affirmative defense to Lara's hostile work environment sex harassment claim is unnecessary. *Cf. Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 - 1049 (7th Cir. 2000) (declining to "decide whether a hostile work environment existed because the question whether [the employer] took prompt and effective remedial action [was] dispositive").

## III. Lara's Intentional Infliction of Emotional Distress Claim

Finally, the Court addresses Lara's claim for intentional infliction of emotional distress against Brown. In support of its motion for summary judgment on Lara's intentional infliction of emotional distress claim, Diamond argues that Lara's allegations "fall short of the extreme and outrageous conduct that would constitute intentional infliction of emotional distress" contending that Lara's allegations are "at most, petty indignities." (Defs.' Mem. Mot. Summ. J. at 13-14.) In response, Lara asserts that Brown's conduct was "well beyond" the parameters of a usual workplace dispute, arguing that she provided "solid evidence" showing that Brown caused severe emotional distress, citing that she was "shocked" about Brown's comment regarding the way her breasts looked in a sweater and her "disgust" that Brown asked her out on a date after "he had been harassing her for at least six months." (Pl.'s Resp. Mot. Summ. J. at 25-26.)

"A claim for intentional infliction of emotional distress . . . requires more than what is required for sexual harassment." *Poulos*, 2002 WL 31001876 at *17 (quoting *Piech v. Arthur*

*Andersen & Co.,* 841 F. Supp. 825, 831 (N.D. Ill. 1994). Under Illinois law, "[t]o state a claim for intentional infliction of emotional distress, a plaintiff must show that: '(1) defendants' conduct was extreme and outrageous; (2) defendants either intended to inflict severe emotional distress or knew that there was a high probability that their conduct would do so; and (3) the defendants' conduct actually caused severe emotional distress.'" *Lifton v. Bd. of Educ. of City of Chicago,* 416 F.3d 571, 579 (7th Cir. 2005) (quoting *Thomas v. Fuerst,* 803 N.E.2d 619, 625 (Ill. App. Ct. 2004)). Additionally, "'severe emotional distress' is distress so severe that no reasonable person could be expected to endure it," see *id.,* and "[t]he nature of the defendant's conduct must be so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Dunn v. City of Elgin,* 347 F.3d 641, 651 (7th Cir. 2003) (internal quotation omitted).

In reviewing the totality of the conduct alleged by Lara in support of her claim for intentional infliction of emotional distress, Brown's conduct, one comment regarding Lara's breasts, one comment regarding another woman's breasts, an attempt to peer down Lara's uniform shirt, asking Lara out on a date, an instance of touching her hair, and commenting daily on the smell of her perfume, the Court notes that Lara's allegations do not rise to the level of severity and outrageousness required for her to maintain her claim.[5] Thus, Lara's feelings of "shock" or "disgust"

---

[5]In responding to the motion for summary judgment, Lara appears to rely on much of the same conduct she uses to assert her hostile work environment claim and her amended complaint only specifically mentions Brown's attempt to look at her breasts as extreme and outrageous behavior. *See* Am. Compl. ¶¶ 32-36. In such a situation, *Jansen v. Packaging Corp. of Am.,* 123 F.3d 490 (7th Cir. 1990), is instructive in that "the court ruled that Title VII preempts common law claims of [intentional infliction of emotional distress]. . . if such a claim is based upon the same operative factual allegations." *Ryan v. Town of Schererville,* No. 2:03-CV-530, 2005 WL 1172614, at *25 (N.D. Ind. May 4, 2005) (citing *Jansen,* 123 F.3d at 493). *See also id.* (granting summary judgment where plaintiff used identical facts to support her intentional infliction of emotional distress claim as she did to buttress her Title VII claim). However, because Lara's claim fails even considering Lara's use of identical facts, the Court does not apply *Jansen* and its impact on the present case.

as to such conduct fail to help her meet the high burden expected of her in order to state her claim for intentional infliction of emotional distress. As this Court has previously noted, "Illinois courts have limited recovery on this tort to victims of only the most intolerable conduct." *See Poulos*, 2002 WL 31001876 at *17 (comparing *Pavilon v. Kaferly*, 561 N.E.2d 1245, 1251-52 (Ill. App. Ct. 1990), which upheld an intentional infliction of emotional distress claim "against [a] defendant who knew plaintiff was susceptible to emotional distress, repeatedly propositioned her and offered her money for sex, fired her when she refused her advances, threatened to kill and rape her, harassed her family and psychotherapist, threatened to challenge custody of her child, and harassed her new employer with letters, phone calls and spurious complaints to government officials," with *Miller v. Equitable Life Assur. Soc'y*, 537 N.E.2d 887, 888-90 (Ill. App. Ct. 1989), which denied an intentional infliction of emotional distress claim notwithstanding "plaintiff's allegations that her supervisors ridiculed her performance or ignored her entirely, denied her request for a transfer, refused to cooperate in recovering valuable property that was stolen from her, forbade her to call the police when another employee physically attacked her, encouraged other insurance agents' sexual harassment of her, suggested that she use sex to make her insurance sales and fired her when she reported other employees' fraudulent practices, and that her co-workers ignored her, called her a white racist and threatened her with physical harm"). In light of this high standard, and Lara's inability to meet it, the Court dismisses Count IV of Lara's amended complaint.

## Conclusion

For the reasons set forth above, the Court grants Diamond's and Brown's motion for summary judgment. This case is hereby terminated. This order is final and appealable.

**ENTERED:** _____

_____
**UNITED STATES DISTRICT JUDGE**

**DATED:** JAN 9 2006